UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA FLEISCHMAN,<br><br>                           Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Commissioner of Social Security,<br><br>                          Defendant. | Case No.: 22-CV-699-WVG<br><br>**ORDER ON JOINT MOTION FOR JUDICIAL REVIEW** |

**I.    INTRODUCTION**

This action arises from the Commissioner of Social Security Administration Kilolo Kijakazi's ("Commissioner" or "Defendant") denial of Sabrina Fleischman's ("Plaintiff") application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act ("Title XVI" or "Act"). (AR 102-105, 111-116.) Before the Court is the Parties' December 30, 2022, Joint Motion for Judicial Review ("Joint Motion"). Pursuant to 42 U.S.C. section 405(g) ("Section 405(g)"), Plaintiff seeks judicial review of the Commissioner's final administrative decision ("Decision") and requests a remand for further administrative proceedings to revisit the matter of SSI benefits. (Doc. Nos. 2, 3.) The Joint Motion raises three issues, namely whether the assigned administrative law judge ("ALJ") erred in (1) formulating the RFC; (2) evaluating Dr. Kramer's opinion; and (3)

evaluating Plaintiff's subjective statements. Having reviewed and considered the entirety of the Parties' Joint Motion as well as the accompanying administrative record, the Court GRANTS IN PART and DENIES IN PART the Parties' Joint Motion. Specifically, the Court DENIES Plaintiff's Motion for Summary Judgment, GRANTS Defendant's Motion for Summary Judgment, and explains below.

## II.     PROCEDURAL HISTORY

On May 24, 2019, Plaintiff applied for Supplemental Security Income ("SSI") benefits under Title XVI, alleging disability beginning on January 1, 2018. (AR 192-202.) The Commissioner denied Plaintiff's application initially on September 30, 2019, and upon reconsideration on January 9, 2020. (AR 102-105, 111-116.) Plaintiff filed a written request for a hearing before an ALJ, which the Commissioner received on March 5, 2020. (AR 117.) ALJ Peter Valentino ("ALJ Valentino") held a telephonic hearing on Plaintiff's application on November 19, 2020. (AR 44-74.) Plaintiff appeared and testified at the hearing. (AR 44.) Plaintiff's attorney, David Shore, was also present for the hearing. (*Id.*) Additionally, Nicole Martinez, PsyD., an impartial medical expert ("Dr. Martinez"), and Lizet Campos, an impartial vocational expert, ("VE Campos") appeared and testified at the hearing. (*Id.*) ALJ Valentino retired prior to issuing a decision; consequently, on April 16, 2021, a second hearing was held before ALJ Treblin. (AR 25-43.) All participants attended the hearing by telephone. (AR 164; 169). Plaintiff appeared and testified by telephone. (*Id.*) Plaintiff's attorney, David Shore, also appeared telephonically. (*Id.*) Lorian Hyatt, an impartial vocational expert, ("VE Hyatt") also appeared and testified. (*Id.*) On April 23, 2021, ALJ Treblin issue his Notice of Decision ("Decision") and denied Plaintiff SSI benefits after finding Plaintiff was not disabled within the meaning of the Social Security Act. (AR 7.)

/ / /
/ / /
/ / /
/ / /

### III.   FACTUAL BACKGROUND

#### a.  Plaintiff's Medical History

Plaintiff is 30 years old and, in her Joint Motion, alleges she suffers from physical and mental impairments that have left her disabled and unable to work to any extent. (AR 293.) Regarding her physical impairments, Dao M. Tran, a doctor of osteopathic medicine, ("Dr. Tran") found Plaintiff experiences chronic bilateral low back pain with bilateral sciatica; lumbago with sciatica, right side; and subluxation complex of thoracic region. (AR 382.) Plaintiff has been treated with medications that include cyclobenzaprine and fluoxetine. (AR 383). On November 28, 2017, Plaintiff was treated by Jamie Cortez, a chiropractor, ("Chiropractor Cortez") for constant thoracic spine pain. (AR 392.) Plaintiff reported her symptoms were relieved by rest, lying down, heat, over-the-counter medication, and chiropractic adjustments. (AR 392). On January 11, 2018, Plaintiff submitted to a magnetic resonance imaging ("MRI") of her lumbar and thoracic spine, which revealed "minimal right L5-S1 facet arthrosis." (AR 379.) She also received a thoracic computed tomography ("CT") scan the same day, which demonstrated "mild generalized thoracic epidural lipomatosis." (AR 379.) Progress notes also showed relevant physical examinations were mostly normal. (e.g., AR 692.) On February 10, 2020, Dr. William Weismann found Plaintiff had been experiencing bilateral arm pain, hand stiffness, wrist pain, neck pain, back pain, shoulder pain, swelling fingers, and intermittent facial rash. (AR 682.) Plaintiff is also obese. (AR 684). On February 20, 2020, Plaintiff was treated for cervical spine pain by Chiropractor Cortez, who found Plaintiff had an "active painful range of motion." (AR 679.) Chiropractor Cortez also noted crepitus and "maximum tenderness: mild spinous, paraspinous, and trapezial tenderness" as well as asymmetrical posture. (AR 679.) To date, Plaintiff has not been referred by a doctor for chronic pain management. (AR 102.)

Regarding mental impairments, Plaintiff has been diagnosed by her long-time treating physician, Dr. William Bennett, with major depressive order, generalized anxiety disorder, and post-traumatic stress disorder ("PTSD".) (AR 424.) As a result of her PTSD,

Plaintiff contends she suffers from nightmares, startle response, vigilance, avoidance, and flashbacks. (AR 521.) Plaintiff also alleges she finds it difficult to relax and experiences about two panic attacks in a month. (AR 692; 713; 728; 742.) Plaintiff underwent mental status examinations that were taken at the time she reported experiencing the alleged mental impairments. The results of those examinations reflected Plaintiff had a depressed or anxious mood while concurrently presenting with normal cognition, attention span, and concentration. (AR 442-43; 466; 469; 474; 478; 482; 487; 492; 495; 499; 504; 508; 518; 522; 525; 531; 534; 540; 541; 545; 551; 555; 567; 571; 584; 588; 600; 604; 611; 615; 619; 629; 633; 698-99; 720; 728-29; 734-35; 742; 747; 755; 760; 768; 773; 423; 448; 454; 460; 482-83.) Medical records also reflect Plaintiff has undergone conservative treatment for her mental impairments, which include supportive therapy and medication management. (AR 697; 712; 727.) There is no further evidence of recommended or anticipated treatment such as an aggressive treatment plan of Plaintiff's mental impairments.

Regarding Plaintiff's generalized anxiety disorder, she has been treated with psychotherapy and medication management. (AR 299; 309; 312; 315-16; 422; 424; 432; 697; 712; 727; 741; 754; 767.) Plaintiff's treatment records reveal Plaintiff has not been compliant with the prescribed medications for her mental impairments. (*E.g.*, AR 697; 699; 712; 727; 743.) Plaintiff also reported an exacerbation of symptoms postpartum during an evaluation in August 2017. (AR 697; 712; 727.) Further, progress notes show Plaintiff's anxiety is triggered by external factors including caring for her two children, who, Plaintiff alleges, have medical problems of their own. (AR 515-16.) Notably, Plaintiff's mental health examination results have shown appropriate mood and affect. (AR 335; 340-41; 347; 353-54; 359; 366; 371; 381; 684, 692.) Plaintiff does have a long history of major depressive disorder and associated symptoms that include loss of appetite, fatigue, excessive worry, and diminished interest or pleasure. (AR 684; 691; 698; 710; 713; 751; 764.) Plaintiff's medical records generally indicate Plaintiff is more concerned with anxiety than depression. (AR 440; 462; 530.)

There have been two documented emergency room visits for Plaintiff's treatment related to her mental symptoms. (AR 317; 299.) On July 9, 2019, Plaintiff was treated for anxiety and insomnia that was related to stress induced by a friend's then-recent suicide. (AR 317-25.) Plaintiff's medical file specific to that incident indicates Plaintiff was given Ativan, responded well to the medication, and generally showed good improvement. (AR 318.) Plaintiff had no suicidal ideation and no signs of acute panic attack, acute psychosis, or severe anxiety. (AR 318.) On August 13, 2019, Plaintiff was treated for mild and intermittent palpitations associated with anxiety. (AR 299-308.) She was briefly treated and discharged. (AR 299-308.) The record shows Plaintiff's mental impairments were medically manageable, and does not show evidence of any recommended or anticipated treatment such as an aggressive treatment plan. Plaintiff has not had any inpatient psychiatric hospital treatment for exacerbation of her mental symptoms. Plaintiff's examination records also show appropriate mood and affect. (AR 335; 340-41; 347; 353-54; 359; 366; 371; 377; 381; 389; 412.)

Notwithstanding her mental impairments, Plaintiff testified at the April 16, 2021, telephonic hearing before ALJ Treblin that she has been able to care for her children and pets, perform basic cleaning, do laundry, and prepare meals. (AR 52-53; 228-29; 237-38; 441; 517.) Plaintiff also testified she has been able to drive by herself and take her children to their medical appointments. (AR 51; 515-16.) Plaintiff has not engaged in substantial gainful activity since May 24, 2019, and prior to her alleged disabling condition, was employed as a bakery worker, courtesy clerk, café associate, and seasonal helper. (AR 12; 245-51.)

### b. Dr. Kramer's Opinion

On September 9, 2019, Sheldon Kramer, Ph.D., ("Dr. Kramer") performed a consultative examination with Plaintiff, who was referred to Dr. Kramer for PTSD and anxiety. (AR 415-17.) Dr. Kramer's mental status evaluation revealed Plaintiff's thought process appeared to be intact and her impulse control, insight, and judgment appeared to be good. (AR 416.) Further, Plaintiff was cooperative and calm, and she appeared well-

groomed and appropriate. (*Id.*) Dr. Kramer also reported there was no indication of any thought disorder and or psychotic process. (*Id.*) Dr. Kramer did note "it does not appear that the patient is on any psychiatric medications," despite documentation Plaintiff was "on Lexapro 5 mg" and off and on other psychiatric medications. (*Id.*) Plaintiff was given the Saint Louis University Mental Status ("SLUMS") examination to assess Plaintiff's cognitive performance and propensity for dementia. (*Id.*) Dr. Kramer scored Plaintiff between 20 or 21 of 30, constituting a borderline result of between mild and major cognitive impairment. (*Id.*) In his medical source statement, Dr. Kramer opined Plaintiff would have difficulty sustaining an eight-hour work day because of mood instability; difficulty interacting with others because of preoccupation with her anxiety and being hyper alert to both peers and authority figures; and difficulty tracking tasks because of her inability to concentrate and debilitating anxiety at a severe level. (*Id.*)

### c. Plaintiff's Other Health Assessments

Plaintiff was evaluated by other physicians, psychiatrists, and vocational experts for her physical and mental ailments dating to the relevant period, namely Dr. Nicole Martinez; Dr. Mark Berkowitz; Dr. Elizabeth Covey; and Vocational Expert Lizet Campos ("VE Campos"). On November 19, 2020, Dr. Martinez, a psychiatrist, opined Plaintiff had the following limitations: moderate limitations interacting with others, occasional public contact, occasional contact with workers, and no tandem work tasks with coworkers. (AR 62-63.) Dr. Martinez also testified Plaintiff's profile did not fit Dr. Kamer's SLUMS score of 20 to 21, which would be consistent with someone who has dementia. (AR 60-61.) Dr. Martinez elaborated that most of Plaintiff's mental status examinations from treating doctors were within normal limits. (AR 60-61.) On April 16, 2021, vocational expert Lorian Hyatt ("VE Hyatt") opined that a hypothetical individual with the limitations set forth by Dr. Martinez would be able to work as a cleaner, merchandise marker, and mail sorter. (AR 40.) State agency consultant Dr. Covey found Plaintiff was not disabled and was capable of short, simple instructions with social limitations. (AR 83-84.) Another state agency consultant, Dr. Berkowitz, determined Plaintiff was not disabled, and he noted that

Dr. Kramer's "opinion contrasts with the other evidence in the record." (AR 97-100.) Dr. Berkowitz also found Plaintiff appeared "capable of understanding and remembering more than short and simple instructions." (AR 95.)

### d. ALJ Treblin's April 23, 2021, Decision

As noted, Plaintiff and VE Hyatt appeared at a telephonic hearing on Plaintiff's disability benefits application. (AR 10.) David Shore appeared as counsel on Plaintiff's behalf. (*Id.*) ALJ Treblin examined whether Plaintiff was disabled under section 1614(a)(3)(A) of the Social Security Act ("Act"). (AR 20.) Based on the application for supplemental security Plaintiff filed on May 24, 2019, ALJ Treblin concluded Plaintiff was not disabled within the meaning of the Act and issued his Decision accordingly. (*Id.*) In doing so, ALJ Treblin made ten findings of fact as follows:

(1) **Plaintiff had not engaged in substantial gainful activity since May 24, 2019, Plaintiff's amended alleged onset date** (citing 20 CFR 416.971, *et seq.*);

(2) **Plaintiff had the following severe impairments: major depressive disorder; generalized anxiety disorder; and PTSD. These impairments significantly limited Plaintiff's ability to perform basic work activities as required by Social Security Regulations ("SSR") 85-28**. Concurrently, ALJ Treblin noted Plaintiff had a host of non-severe physical impairments, specifically upper back pain, low back pain with sciatica, obesity, stiffness and pain in her hands, and tension in her neck. ALJ Treblin added Plaintiff's physical examinations were mostly normal, and Plaintiff had been treated conservatively as a result of her complaints about pain and related medications. Despite Plaintiff's complaints, ALJ Treblin noted Plaintiff had not alleged disability on a physical basis (citing 20 CFR 416.920(c));

(3) **Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1** (citing 20 CFR 416.920(d), 416.925 and 416.926). ALJ Treblin elaborated Plaintiff's mental impairments failed to meet or medically equal the criteria of listings 12.04, 12.06, and 12.15. Specifically, Plaintiff's mental impairments did

not cause at least two "marked" limitations or one "extreme" limitation that are needed to satisfy the "paragraph B" criteria;

(4) **Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: Plaintiff was limited to understanding, remembering, and carrying out unskilled job instructions and tasks; interacting appropriately with co-workers and supervisors, but not collaborating or working as part of a team; engaging in occasional, brief contact with the public; appropriately responding to routine work situations and settings; responding appropriately to changes in routine work settings and situations; and appropriately asking questions and using her judgment**. ALJ Treblin "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p," and he "also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920(c);"

(5) **Plaintiff was unable to perform any of her past relevant work**. To support his conclusion, ALJ Treblin cited to VE Hyatt's testimony that Plaintiff's RFC precluded Plaintiff from performing any of her past relevant work (citing 20 CFR 416.965);

(6) **Plaintiff was 25 years old at the time of the Decision's issuance, which qualified Plaintiff as a younger individual age 18-49, based on the date she filed her application for SSI benefits** (20 CFR 416.963);

(7) **Plaintiff at least a high school education** (20 CFR 416.964);

(8) **Plaintiff had no transferable job skills to other work within her residual functional capacity ("RFC")** (citing SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

(9) **Considering Plaintiff's age, education, work experience, and RFC, there existed jobs in significant numbers in the national economy that Plaintiff could perform** (citing 20 CFR 416.969 and 416.969(a)). ALJ Treblin accepted VE Hyatt's

testimony that Plaintiff's limitations permitted her to work as a cleaner, merchandise marker, and mail sorter. (AR 71-72.) In doing so, ALJ Treblin noted VE Hyatt's testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (AR 19); and, finally,

(10) **Plaintiff had not been under a disability, as defined in the Social Security Act, since May 24, 2019, the date Plaintiff's application for SSI benefits was filed** (20 CFR 416.920(g)). (*See* AR 12-19.)

## IV. LEGAL STANDARD

Title 42 U.S.C. section 405(g) ("Section 405(g)") provides for judicial review of the Social Security Administration's disability determinations: "The court shall have the power to enter . . .  a judgement affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A reviewing court will reverse the ALJ's decision only if "it is based upon legal error or is not supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is "more than a mere scintilla but less than a preponderance." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

In review of the agency's finding, a reviewing court considers the evidence in its entirety, weighing both the evidence that supports and detracts from the ALJ's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "If the record would support more than one rational interpretation, we defer to the ALJ's decision." *Bayliss*, 427 F.3d at 1215.

/ / /

/ / /

/ / /

/ / /

## V. DISCUSSION

### a. ALJ Treblin's Formulation of the RFC

Plaintiff argues ALJ Treblin erred in formulating her RFC by conflating simple tasks with unskilled work and thus rendering the RFC ambiguous. At all times, the ALJ is responsible for assessing a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c). In doing so, the ALJ may consider any statements provided by medical sources, including statements that are not based on formal medical examinations. *See* 20 C.F.R. §§ 404.1513(a), 404.1545(a)(3). However, once at the hearing level, the ALJ is not bound by state agency findings, and the RFC becomes an issue reserved for the ALJ's resolution. 20 C.F.R. § 416.946. An ALJ's determination of a claimant's RFC must be affirmed "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss*, 427 F.3d at 1211.

Here, the Court finds ALJ Treblin's RFC assessment is supported by substantial evidence. ALJ Treblin set forth his determination of Plaintiff's RFC after reviewing the entirety of Plaintiff's administrative record, inclusive of all medical opinions and prior administrative findings consistent with the requirements of 20 CFR 416.920(c). To that end, ALJ Treblin based the RFC on objective medical evidence pursuant to 20 CFR 416.929 and SSR 16-3p. (AR 16.) Plaintiff's comprehensive medical record reveals largely unremarkable mental status examinations and a conservative, rather than aggressive, history of mental health treatment. (AR 17.) ALJ Treblin relied heavily upon these records in his Decision, inclusive of the fact that Plaintiff was not placed on any aggressive mental health treatment plan and Plaintiff's own testimony indicating Plaintiff did not require aggressive medical intervention for her mental impairments. (*Id*.; see also AR 697; 712; 727). In particular, Plaintiff's longstanding treatment with Dr. Bennett produced records of her mental status examinations taken at the time she reportedly experienced mental impairments, where the results of such examinations were vastly normal. Specifically, those treatment records revealed Plaintiff showed a depressed or anxious mood, displayed normal cognition, attention span, and concentration, and did not require escalated medical

intervention. (AR 442-43; 466; 469; 474; 478; 482; 487; 492; 495; 499; 504; 508; 518; 522; 525; 531; 534; 540; 541; 545; 551; 555; 567; 571; 584; 588; 600; 604; 611; 615; 619; 629; 633; 698-99; 720; 728-29; 734-35; 742; 747; 755; 760; 768; 773; 423; 448; 454; 460; 482-83.) Consistent with those records, Plaintiff's remaining medical file shows Plaintiff's mental impairments were managed effectively, and her objective examination records demonstrate appropriate mood, affect, and no exacerbation of her mental impairments. (AR 335; 340-41; 347; 353-54; 359; 366; 371; 377; 381; 389; 412.)

To that end, ALJ Treblin appropriately found Dr. Martinez's testimony highly persuasive. (*Id*.) Dr. Martinez opined "the claimant has the capacity for unskilled jobs with only occasional public contact and occasional co-employee contact." (*Id*.) Even so, ALJ Treblin's RFC reflected limitations that were more restrictive than those set forth in Dr. Martinez's opinion. Specifically, ALJ Treblin limited Plaintiff to working where she had no collaborative or teamwork contact with coworkers, a limitation that is more restrictive than Dr. Martinez's recommendation that Plaintiff have occasional contact with coworkers. The Court strains to find prejudicial error here and indeed finds none. The circumstance only inures to Plaintiff's benefit because ALJ Treblin found Plaintiff more restricted than Dr. Martinez, whose opinion ALJ Treblin appropriately found credible and in line with the objective evidence.

Notably, too, ALJ Treblin also found persuasive the assessments by state agency mental health consultants Dr. Elizabeth Covey and Dr. Mark Berkowitz. (AR 17.) In particular, Dr. Berkowitz found Plaintiff "capable of understanding and remembering more than short [and] simple instructions." (AR 95.) Consistent with Dr. Berkowitz's assessment, ALJ Treblin found the "assessment of claimant being only capable of simple repetitive tasks is not fully persuasive or supported by longitudinal functioning, objective signs and/or daily functioning in file evidence." (AR 97.) While Plaintiff argues ALJ Treblin created ambiguity in his assessment, the Court disagrees. ALJ Treblin found Plaintiff could perform unskilled job instructions and tasks, which the Court finds is supported by the objective medical record. (AR 14.) Moreover, even if ALJ Treblin

conflated simple tasks with unskilled work, the circumstance is not one that would unravel ALJ Treblin's RFC determination. This is because substantial evidence underlies ALJ Treblin's Decision, which considered the entirety of Plaintiff's medical file and found that the objective records and most medical opinions supported a finding of non-disability, as explained above.

Separately, Plaintiff relies upon *Brandie A.* to argue ALJ Treblin's Decision is flawed for its incorporation of the vocational expert's opinion into the RFC. In *Brandie A.*, the Court held the ALJ committed more than harmless error after finding meritorious plaintiff's argument that the remaining job of addresser was "obsolete and fail[ed] to rise to the level of significant jobs." *Brandie K. A. v. Saul* at *4 (C.D. Cal. May 21, 2020). The Court noted the DOT and vocational information showed the addresser position had an aggregate number of 44,000 national jobs. *Id*. In so holding, the Court found there was no substantial evidence to support the ALJ's determination that the addresser position continued to exist in significant numbers. *Id*. at *5. Here, Plaintiff argues "the job of mail sorter has a reasoning of level 3, indicating that the tasks involved are not simple" and thus ALJ Treblin erred in adopting the vocational expert's opinion that Plaintiff could perform such a job. (Doc. No. 13 at 7). Even in accepting Plaintiff's position as true, ALJ Treblin adopted the remainder of the vocational expert's opinion that Plaintiff could separately perform two other jobs, namely as a cleaner and/or as a merchandise marker. (*Id*.) Taken together, these two occupations exist in 375,000 national job openings, with 175,000 jobs available for the cleaner position and 200,000 jobs available for the merchandise marker position. (AR 19.) The Court finds these two positions, taken either independently or together, undermine Plaintiff's position that she is not able to work in any position available in significant numbers in the national economy in light of ALJ Treblins' RFC assessment. Equally important, Plaintiff never disputed the evidence to support ALJ Treblin's determination that these positions continued to exist in significant numbers in the national economy. Accordingly, the Court finds no relief for Plaintiff's argument that ALJ Treblin's RFC analysis is fatally flawed for its inclusion of VE Hyatt's opinion.

Finally, Plaintiff argues ALJ Treblin's RFC formulation improperly omitted consideration of Plaintiff's physical limitations. While ALJ Treblin's omission of a determination on physical disability is apparent, the Court finds the omission was appropriate under the circumstances. As a foundational matter, Plaintiff did not file an application for SSI benefits on the basis of any physical impairments. (AR 13; see also AR 219.) Plaintiff's own adult function report is consistent with her application insofar as the report does not contain any representations from Plaintiff that she is disabled on the basis of any physical impairment. (AR 241.) Despite Plaintiff's failure to seek SSI benefits on account of a physically disabling condition, ALJ Treblin still reviewed Plaintiff's medical records specific to her physical examinations and, in doing so, noted that the records showed Plaintiff presented as mostly normal. (AR 13 [citing AR 692].) Further, the same records indicated Plaintiff had not been referred for further care of any physical conditions, was not advised to limit her physical activity to any extent, and had conservative treatment plans that included medication consisting of ibuprofen and a muscle relaxant. (AR 13.)

At all times, Plaintiff bears the burden of putting forth sufficient evidence to substantiate the existence of a disabling condition. *Mitchell v. Berryhill*, 2019 WL 366252, at *9 (S.D. Cal. Jan. 30, 2019), report and recommendation adopted, 2019 WL 857644 (S.D. Cal. Feb. 21, 2019) (noting "the burden is on the plaintiff/ claimant to establish a disability," finding the ALJ "properly considered all evidence in the record in coming to the conclusion that plaintiff [wa]s not disabled," and noting "plaintiff's medical record had significant gaps as noted by the ALJ throughout the decision, some of which call[ed] into question [plaintiff's] credibility."); *see generally Pimental v. Saul*, 2020 WL 673649, at *1 (S.D. Cal. Feb. 11, 2020), report and recommendation adopted sub. Nom. Paul P. v. Saul, 2020 WL 1062947 (S.D. Cal. Mar. 5, 2020) (stating a claimant "bears the burden of proving that he or she 'either was permanently disabled or subject to a condition which became so severe as to create a disability prior to the date upon which his or her disability insured status expired.'") (citing *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995.). Here, Plaintiff did not allege a physically disabling condition in her application for SSI

benefits before ALJ Treblin. Accordingly, the Court finds for this separate reason that ALJ Treblin's RFC assessment is free from error as to any unalleged physically disabling condition.

### b. ALJ Treblin's Evaluation of Dr. Kramer's Opinion

With respect to claims that are filed on or after March 27, 2017, "the former hierarchy of medical opinions . . . no longer applies." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Under the revised regulations, a court must consider the following five factors when evaluating the persuasiveness of medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other" factors. 20 C.F.R. § 416.920c(c)(1)-(5). The most important factors the Commissioner considers when evaluating the persuasiveness of medical opinions are "supportability" and "consistency." 20 C.F.R. § 416.920c(a). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods*, 32 F.4th at 791. "Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792.

The Court first addresses the supportability of ALJ Treblin's assessment of Dr. Kramer's opinion. In *Woods*, the ALJ found a doctor's "opinion unpersuasive because it was inconsistent with the overall treating notes and mental status exams in the record." *Woods*, 32 F.4th at 793. The Court held the ALJ's inconsistency finding was supported by substantial evidence. *Id*. In doing so, the Court cited conflicting opinions that showed normal cognition and memory as well as the claimant's ability to take on "additional duties of caring for . . . a [child] and dealing with her [80-year-old] mother's medical issues." *Id.* Here, the Court finds substantial evidence underlies ALJ Treblin's assessment of Dr. Kramer's opinion and is thus supported by the objective record. Indeed, a survey of the record shows Dr. Kramer's opinion was not supported by his own records of his mental examination of Plaintiff. (AR 17.) ALJ Treblin emphasized that Dr. Kramer's determination of a SLUMS score between 20 and 21 directly conflicted with Dr. Kramer's

own examination narrative. (*Id.*) Dr. Kramer's mental status evaluation notes indicated Plaintiff was cooperative and calm, made good eye contact, and showed no indication of any thought disorder or psychotic process. (AR 416). Dr. Kramer's notes also reflect Plaintiff's thought process appeared to be intact, that her concentration seemed to be fair, and her impulse control, insight, and judgement appeared to be good. (*Id.*) Further, as noted by Dr. Martinez, Dr. Kramer's SLUMS score as to Plaintiff would be consistent with an individual who has dementia, a condition that the objective record and Dr. Kramer's own notes do not support to any extent. (AR 60-61.) In light of the inconsistency between Dr. Kramer's own notes and his finding of disability, the Court opines ALJ Treblin's exercise of his decision to discount Dr. Kramer's opinion as inconsistent is reasonable and supported by substantial evidence.

The Court now turns to the matter of consistency between ALJ Treblin's assessment of Dr. Kramer's opinion and the objective record. In *Woods*, the ALJ found a doctor's "opinion unpersuasive because it was inconsistent with the overall treating notes and mental status exams in the record." *Woods*, 32 F.4th at 793. The Court held the ALJ's inconsistency finding was supported by substantial evidence. *Id*. In doing so, the Court cited conflicting opinions that showed normal cognition and memory as well as the claimant's ability to take on "additional duties of caring for . . . a [child] and dealing with her [80-year-old] mother's medical issues." Like the ALJ in *Woods*, ALJ Treblin here pointed to Plaintiff's mental status examinations showing normal cognition as well as Plaintiff's own testimony revealing her ability to take care of her two children who face many medical problems – evidence that directly conflicted with Dr. Kramer's opinion. (AR 13; 14.) Regarding consistency of Dr. Kramer's opinion, ALJ Treblin provided evidence from medical sources and non-medical sources that are inconsistent with Dr. Kramer's opinion. This evidence includes mental status evaluations that show normal cognition, no memory deficits, and normal attention span and cognition. (AR 17.) The evidence also includes ALJ Treblin's consideration of Plaintiff's own testimony regarding her ability to carry out daily activities. (*Id.*) These activities include taking care of her two young

children while her husband is away at a full-time job, basic cleaning, from mopping and vacuuming to washing dishes, handling laundry, preparing meals, taking care of pets, getting around on her own by driving a car, and going to doctor appointments. (*Id*.)

Despite that her own testimony failed to support Dr. Kramer's opinion, Plaintiff claims ALJ Treblin failed to develop the record and thus erred by rejecting Dr. Kramer's opinion without obtaining the raw data for his SLUMS test score. The Court finds this argument unpersuasive. The ALJ in a social security case has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). However, the "'ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.'" *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001)). This includes when "the ALJ find[s] that the record is inadequate to allow for proper evaluation of the evidence." *Tonapetyan*, 242 F.3d at 1150. In *Ford*, the ALJ rejected a medical expert's opinion in part because she failed to provide useful statements regarding the degree of claimant's limitations. *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). The Court held the ALJ did not have to contact the expert again to further develop the record because the ALJ had years of claimant's mental health records and multiple opinions from non-examining psychiatrists to inform her ultimate decision. *Id*. In contrast, the *Tonapetyan* Court noted that part of the reason the ALJ failed to fully develop the record was because he relied heavily on testimony by a medical expert who showed concern over whether the record was complete enough for the ALJ to reach a conclusion and for him to assess the claimant's mental impairment. *Tonapetyan*, 242 F.3d at 1151.

Here, the Court finds ALJ Treblin did not have a duty to develop the record further because there was no evidentiary ambiguity to resolve. ALJ Treblin only partially relied on Dr. Martinez's opinion as a basis for rejecting Dr. Kramer's opinion. To that end, despite Plaintiff's citations to both *Ford* and *Tonapetyan*, neither case bolsters Plaintiff's attempt to undermine ALJ Treblin's assessment of Dr. Kramer's opinion. Like the ALJ in *Ford*,

ALJ Treblin cited to years of Plaintiff's mental health records that showed normal cognition, no memory deficits, and normal attention span and concentration. (AR 17.) Unlike *Tonapetyan*, Dr. Martinez's testimony did not reflect any concern over an inability to assess and evaluate Plaintiff's impairments. In fact, Dr. Martinez testified that her opinion was based off Dr. Kramer's own narrative as well as her review of the entire medical records from Plaintiff's treating doctors. (AR 59-60.) For this reason, ALJ Treblin had a robust administrative record before him that was largely consistent across medical opinions and Plaintiff's own testimony. That Dr. Kramer's opinion conflicted with those opinions, his own notes, and Plaintiff's own testimony does not give rise to ambiguity in the record that required ALJ Treblin's investigation. The circumstance only compelled ALJ Treblin to exercise his inherent discretion to consider Dr. Kramer's opinion and assess Dr. Kramer's credibility accordingly. For this reason, the Court finds the ALJ's duty to develop the record was not triggered, and ALJ Treblin's credibility assessment of Dr. Kramer's opinion is both supported and consisted with the objective medical record. In turn, the Court finds substantial evidence underlies ALJ Treblin's assessment of Dr. Kramer's opinion for the reasons stated above.

### c. ALJ's Evaluation of Plaintiff's Subjective Testimony

Lastly, Plaintiff argues ALJ Treblin erred in evaluating her subjective symptom statements. As a threshold matter, an individual's "statements about . . . pain or other symptoms will not alone establish that [they] are disabled." 20 C.F.R. § 416.929. "There must be objective medical evidence . . . that shows [they] have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 416.929. In deciding to reject a claimant's testimony about the severity of symptoms, the ALJ must provide "specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir.2007)). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). However, a finding that a claimant's testimony is not credible "must be

sufficiently specific to allow a reviewing court to conclude the adjudicator . . . did not arbitrarily discredit a claimant's testimony." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted). Ultimately, the "clear and convincing" standard requires an ALJ to show his work. *Id*. In light of the relevant standard, "it is not the court's role to 'second-guess' an ALJ's reasonable interpretation of a claimant's testimony." *Id.* at 500 (citing *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).).

Here, the Court finds ALJ Treblin provided clear and convincing reasons for rejecting Plaintiff's self-serving testimony. Plaintiff's argument regarding her daily activities is not persuasive. In *Orn*, the ALJ rejected plaintiff's testimony because his activities of "read[ing], watch[ing] television and color[ing] in coloring books" "indicate that he is more functional than alleged." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Here, the ALJ pointed to specific and extensive daily activities Plaintiff was fully capable of doing and that she admitted to undertaking on a consistent basis. ALJ Treblin specifically noted Plaintiff testified that she was capable of cleaning, which included mopping, vacuuming, and washing dishes, handling laundry, preparing meals, taking care of pets, getting around by driving a car to shop, and attending doctor appointments. (AR 16 [citing AR 228-29, 237-38, 441.].) "Despite [her] claims of pain, if a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Such is the case here. Plaintiff's testimony about her own abilities, coupled with the objective medical record substantiating the same, reasonably supports ALJ Treblin's finding on Plaintiff's credibility. Indeed, "contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (citation omitted). For such reason, the Court

///
///
///

finds ALJ Treblin did not err in partially discounting Plaintiff's testimony for lack of credibility.

## VI.  CONCLUSION

Given the foregoing, the Court GRANTS IN PART and DENIES IN PART the Parties' Joint Motion for Judicial Review. Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED. Accordingly, the Court DIRECTS the Clerk of this Court to enter judgment in Defendant's favor and close this case accordingly.

**IT IS SO ORDERED.**

Dated: September 19, 2023

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　Hon. William V. Gallo
　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge